UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

BERNARD GUELIG and
MARY GUELIG,

Debtors.

Case No. 05-33634

Chapter 7

---

MEMORANDUM DECISION ON DEBTORS' OBJECTION TO
TRUSTEE'S INTENT TO SELL PROPERTY

---

The debtors filed a chapter 7 petition on August 17, 2005. The trustee sent notice to creditors dated January 12, 2006, that he intended to sell the debtors' 218 acre farm and homestead, and he moved to have a realtor, Mr. Frank Adashun, appointed for this purpose. The court received no objection to appointment of a realtor and signed the order appointing Mr. Adashun. However, the debtors objected to the trustee's proposed sale of the property on the grounds that there is no equity for distribution to creditors in the property to be sold. The trustee has objected to the debtors' discharge on the grounds that they deliberately understated the value of the real estate on their schedules.

The property is subject to a land contract between the debtor-wife's mother, Virginia Bittner (vendor), and the debtors (vendees). Ms. Bittner has a life estate interest in the property. Badgerland Farm Credit Services, a judgment creditor, takes issue with the debtors' arguments regarding the value of the property and the amount due on the land contract. Its position is that there is enough equity in the property for it to have a judgment lien, and it supports the trustee's position. Badgerland presented evidence on the amount of its claim, but since the debtors have not objected to its claim, nor addressed the matter in their brief, it is not necessary to fully

adjudicate the amount of the claim at this time.

The court held a hearing on April 5, 2006, at which time the realtor and appraisers testified about the property and its value. The court gave the parties an opportunity to file additional documentation and took the matter under advisement.

*Value of the Property*

The debtors valued their property at $174,050 on Schedules A and C. Bernard Guelig was vague as to why that figure was used, but it is close to the purchase price agreed to when the land contract was signed in 1987, the same year the debtors moved to the farm. It is also close to the assessed value of all of the parcels, but the tax bills indicate that the assessed value may be different from the fair market value. Mr. Guelig indicated that he still considered the farm as belonging to his mother-in-law since he had never made a payment on the land contract.

Frank Adashun, a certified residential appraiser and real estate broker employed by the estate to sell the property, testified that he believed the property should sell for about $3,000 per acre for the cropland, not including the parcel with the house and outbuildings. The price could be as high as $4,000 per acre. The building plus 10 acres would sell for $175,000 without adjusting for Ms. Bittner's life estate, with the remainder selling for $625,000. When he found out about Ms. Bittner's life estate, he reduced the value by $15,000, as she is 87 years old. This would bring his estimate to approximately $785,000. He acknowledged that he was unable to see the inside of the house, and its condition might raise or lower this estimate. Mr. Adashun believed that the parcels are laid out with three sides of road frontage, and dividing the parcels for separate sales would not be difficult. Also, although there is a town regulation that a rural homestead have 35 acres, but that would not apply to an existing homestead, such as the subject

property. Thus, separating the homestead, or the homestead plus an additional 40 acres would be possible.

Dennis Badtke, Badgerland's Wisconsin Certified General Appraiser, appraised the farm at $700,000 after discounting $20,000 for the life estate interest of Virgina Bittner. He provided a written appraisal. If the property were divided into 35- or 40-acre parcels, the value would be raised 10 to 20 percent, for a total value of $770,000 to $840,000. He provided a cost approach and a detailed sales comparison approach. All of his comparable sales were older former dairy farms, like the subject, that sold as part-time farms, and he included a soil and topography analysis. Four of the five comparable sales ranged from about $3,100 to $3,300 per acre, which supports his final figure.

Larry Pluim prepared the debtors' appraisal. He is an auctioneer, not a certified appraiser, although he may have been in the past. He valued the property at $2,200 an acre, using the sales comparison approach, for a total of $531,750, including the house. Descriptions of comparable properties were not included in his appraisal, but he testified that comparable sales properties were $3,700 per acre, $3,400 per acre, $2,800 per acre, and $3,388 per acre. His reason for the steep discount for the subject property was "experience selling" and the fact that the land was hilly. The court did not find his opinion as convincing as Mr. Badtke's better reasoned and more detailed analysis.

Mr. Badtke's appraisal was not only better reasoned, it was consistent with the estimate of Mr. Adashun, who was also a certified appraiser with 30 years' experience in selling real estate. The court finds the value of the farm is $700,000.

The debtors allege that the adjoining property was zoned for a gravel pit, and a wind farm

3

was scheduled to be put up. None of the appraisers found this to be of particular moment, especially with respect to agricultural use. In any event, the court sustained Badgerland's objection to that evidence as hearsay, and this factor is not taken into consideration.

*Amount Due on the Land Contract*

The land contract dated January 30, 1987, provided for a purchase price of $175,000 with interest at 7 percent per annum. According to Mr. Guelig, no payments of principal or interest have ever been made on the land contract. The land contract further provided for payment in full of the outstanding balance on or before January 29, 1996. With respect to interest, the land contract provides: "Following any default in payment, interest shall accrue at the rate of 7 % per annum on the entire amount in default (which shall include, without limitation, delinquent interest and, upon acceleration or maturity, the entire principal balance)."

The debtors argue the court should interpret this provision to mean that the vendor is entitled to compound interest, monthly, from the date of the first payment due to the present time. According to the debtors' calculations, Ms. Bittner is owed $667,116.64 as of March 31, 2006.

Badgerland argues that only simple interest may be charged on the balance after the January 29, 1996, date. In computing the balance due, interest on delinquent payments could be compounded only through the date of maturity of January 29, 1996, because the land contract makes no provision for compounding interest after the maturity date. Compounding the interest from the inception of the land contract through the maturity date results in the sum of $146,730.36. With the principal balance of $175,000, a total of $321,730.36 would have been due at maturity. Accruing interest of 7 percent on a simple interest basis from the maturity date forward results in a total of $546,941.61 (7% x $321,730.36 = $22,521.13/year x 10 years =

4

$225,211.25 + $321,730.36) now due under the land contract.

Alternatively, Badgerland argues simple interest should only accrue under the land contract on the entire balance due 60 days following the missed payment of the first installment. This would be $177,348.99 ($1,164.29 installment + 2 months of interest + principal). Adding 19 years of annual interest of $12,414.43 per year would total $413,223.08 due under the land contract. The court is not persuaded that this should be the interpretation of the interest provision.

The court finds that the amount due under the land contract is $546,941.61. The agreement provides for interest on interest, but only up to the date of maturity. The first clause of the sentence provides for 7% interest, and it states two circumstances, written in the conjunctive, to which the interest applies. The first circumstance is for amounts in default, including accrued interest. Until the time of maturity, each monthly default would be accrued, and interest would be charged on the total amount, resulting in compound interest. The second circumstance to which the 7% interest charge applies is maturity. At that time, interest shall accrue at 7% on the entire principal balance. This includes principal, plus accrued interest on all installments in default. The use of the conjunctive indicates that the application of interest is different before and after maturity. Since the contract does not clearly provide for compound interest into perpetuity, simple interest applies. *See* Wis. Stat. § 138.05(1)(c) ("In the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest, unless an agreement to that effect is *clearly expressed* in writing, and signed by the party to be charged therewith") (emphasis added); 47 C.J.S. *Interest & Usury* § 15 ("As a general rule, in the absence of a contract therefor, express

5

Case 05-33634-mdm    Doc 45    Filed 06/09/06    Page 5 of 7

or implied, or of a statute authorizing it, compound interest is not allowed to be computed on a debt."). Accordingly, without consideration of Badgerland's judgment lien, if any, the debtor's homestead has equity of approximately $154,000. Subtracting the debtor's homestead exemption of $40,000, there is equity of about $114,000 available to creditors.

Whether Badgerland has a judgment lien, or the amount of the lien, may turn on later events, such as the sale price, determination of the claim, and whether the debtors receive a discharge. However, given the court's findings as to the value of the property and the amount of the land contract vendor's interest, there is value for creditors over and above administration expenses and the vendor's interest. Therefore, the debtors' objection to sale by the trustee is overruled. The debtors will be ordered to cooperate with the trustee in the sale of their interest.

*Attorney's Fees Due on Badgerland's Claim*

Badgerland asserts it is due $127,882.12 as of March 2006, plus interest, fees and costs. The original judgment from August 28, 2003, was $78,292.66. It arose pursuant to a default in the loan agreement dated September 14, 2000, and according to the judgment, the equipment and any other collateral has already been liquidated. The loan agreement provided for reasonable attorney's fees and legal expenses incurred by the borrower in enforcing its debt. Additional charges include: $18,532.80 pre-petition interest (at the judgment rate, not the 9.8% contract rate); $658.35 post-petition interest through the date of the hearing; $5,688.64 pre-petition attorney's fees for Lee, Kilkelly, Paulson & Younger, S.C. (LKPY); $19,659.97 post-petition attorney's fees for LKPY; $4,048.70 post-petition attorney's fees for Attorney Wieting; and a $1,021.00 appraisal (it is not clear if this appraisal is pre- or post-petition). This updates Badgerland's proof of claim, which was filed as unsecured and is the only proof of claim filed so

6

far in the case. The deadline to file has not passed because creditors were initially notified not to file claims.

Badgerland requests the court adopt the minority view and allow all of its post-petition fees and costs as having arisen pursuant to a pre-petition contract. *See, e.g., In re New Power Co.*, 313 B.R. 496 (Bankr. N.D. Ga. 2004). However, such a determination is premature. If the property is sold for the amount predicted, there is only about $114,000 available to creditors, and costs of sale (such as a 6% commission for the realtor, $42,000, plus the trustee's fees and expenses, etc.) may make such a determination moot. Furthermore, there is no objection to the proof of claim pending, so the matter has not been fully addressed by the debtors, trustee, or any other interested party.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. A separate order will be entered accordingly.

June 9, 2006

　　　　　　　　　　　　　　　　　　　Margaret Dee. McGarity
　　　　　　　　　　　　　　　　　　　U.S. Bankruptcy Judge